UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN LEE DEJAEGHERE                    Case No. 15-10710

          Plaintiff,                    Stephanie Dawkins Davis
v.                                     United States Magistrate Judge

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____/

**OPINION AND ORDER**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 16)**

**I.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

    A.     Proceedings in this Court

On February 25, 2015, plaintiff filed the instant suit seeking judicial review

of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Victoria A. Roberts referred this matter to Magistrate Judge Michael Hluchaniuk

for the purpose of reviewing the Commissioner's decision denying plaintiff's

claims for disability insurance benefits and supplemental security income.  (Dkt.

4).  On January 5, 2016, this matter was reassigned to the undersigned Magistrate

Judge.  *See* Text-Only Order of reassignment dated 1/5/16.  On February 24, 2016,

the parties filed a notice of consent to this Magistrate Judge's authority, which was

signed by Judge Roberts. (Dkt. 19, 20). This matter is before the Court on cross-motions for summary judgment. (Dkt. 15, 16). Plaintiff also filed a reply brief in support of his motion for summary judgment. (Dkt. 17).

      B.    <u>Factual Background and Administrative Proceedings</u>

Plaintiff, John Lee Dejaeghere is a 50 year old man, who worked for approximately 20 years in heavy construction repairing roads. At 6'2" and 220 pounds, plaintiff was called upon to lift items weighing as much as 100 pounds and otherwise met the strenuous physical demands of a construction highway laborer. However, by September of 2009, plaintiff alleges that he was no longer able to handle the taxing demands on his body. Specifically, he claims that he experienced such severe pain in his neck, shoulders, hips, lower back and all of his joints that he simply could not keep up anymore. (Dkt. 13-2, Pg ID 71-73).

Plaintiff filed the instant claims on January 25, 2012 for a period of disability and disability insurance benefits, alleging that he became disabled on September 15, 2009. (Dkt. 13-2, Pg ID 50). The claims were initially disapproved by the Commissioner on July 9, 2012. *Id.* Plaintiff requested a hearing and on September 12, 2013, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Timothy C. Scallen, who considered the case *de novo*. (Dkt. 13-2, Pg ID 68-97). In a decision dated October 25, 2013, the ALJ found that plaintiff was not disabled. (Dkt. 13-2, Pg ID 47-62). Plaintiff requested a review of that

2

decision on November 14, 2013. (Dkt. 13-2, Pg ID 44). The ALJ's decision

became the final decision of the Commissioner when the Appeals Council, on

December 29, 2014, denied plaintiff's request for review. (Dkt. 13-2, Pg ID 39-

43); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

    C.    <u>ALJ Findings</u>

Plaintiff was 43 years old on the alleged disability onset date. (Dkt. 13-2,

Pg ID 61). Plaintiff had past relevant work as a construction worker, which

involves heavy exertion. *Id*. The ALJ applied the five-step disability analysis to

plaintiff's claim and found at step one that plaintiff had not engaged in substantial

gainful activity since the alleged onset date. *Id*. at 52. At step two, the ALJ found

that plaintiff's cervical spondylitis, degenerative disc disease with pain in the neck

and back with exacerbated pain after a motor vehicle accident in April 2012,

carpal tunnel syndrome with neuropathy, and bilateral rotator cuff impingement

syndrome were "severe" within the meaning of the second sequential step. *Id*.

However, at step three, the ALJ found no evidence that plaintiff's combination of

impairments met or equaled one of the listings in the regulations. *Id*. at 53.

Thereafter, the ALJ determined the following as to plaintiff's residual

functional capacity ("RFC"):

> After careful consideration of the entire record, I find
> that the claimant has the residual functional capacity to
> perform sedentary work as defined in 20 CFR

> 404.1567(a) except lifting and carrying less than 10
> pounds and lifting and carrying between 10 pounds and
> 20 pounds less than occasionally; standing, walking and
> sitting up to 4 hours each in an 8 hour workday;
> occasional posturals (balancing, stooping, kneeling,
> crouching and crawling); occasional climbing of stairs
> and ramps but no climbing ladders, ropes, or scaffolds;
> occasional reaching, handling, and fingering; no
> unprotected heights or dangerous machinery; no extreme
> cold or humidity; and only simple, routine tasks.

*Id*. at 53.  At step four, the ALJ found that plaintiff was unable to perform his past

relevant work, given his RFC.  *Id*. at 61.  At step five, the ALJ denied plaintiff

benefits because he found that plaintiff could perform a significant number of jobs

available in the national economy.  *Id*. at 61-62.

For the reasons set forth below, plaintiff's motion for summary judgment is

**GRANTED**, defendant's motion for summary judgment is **DENIED**, the findings

of the Commissioner are **REVERSED**, and this matter is **REMANDED** for

further proceedings consistent with this Opinion.

## II.    ANALYSIS AND CONCLUSIONS

### A.    Standard of Review

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing, *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record

only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her

7

>past relevant work, benefits are denied without further
>analysis.
>
>Step Five:  Even if the claimant is unable to perform his
>or her past relevant work, if other work exists in the
>national economy that plaintiff can perform, in view of
>his or her age, education, and work experience, benefits
>are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

   C.   <u>Weighing of Medical Opinions</u>

      1.   Legal Standards

   The opinion of a treating physician should be given controlling weight if it is:  (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).  The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion.  These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight.  *See id.* at 376-77.

      This requirement is not simply a formality; it is to

9

> safeguard the claimant's procedural rights. It is intended
> "to let claimants understand the disposition of their
> cases, particularly in situations where a claimant knows
> that his physician has deemed him disabled and therefore
> might be especially bewildered when told by an
> administrative bureaucracy that [ ] he is not.
> Significantly, the requirement safeguards a reviewing
> court's time, as it "permits meaningful" and efficient
> "review of the ALJ's application of the [treating
> physician] rule."

*Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citations omitted).  "This circuit

'has made clear that [it] do[es] not hesitate to remand when the Commissioner has

not provided good reasons for the weight given to a treating physician's opinion.'"

*Gayheart,* 710 F.3d at 380 (quoting *Cole*, 661 F. 3d at 939).

Even if an ALJ determines that plaintiff's treating physician's opinions

should not be given controlling weight despite the medical evidence in support,

"the ALJ must still determine how much weight is appropriate by considering a

number of factors, including the length of the treatment relationship,

supportability of the opinion, consistency of the opinion with the record as a

whole, and any specialization of the treating physician."  *Allen v. Comm'r of Soc.

Sec.*, 2013 WL 5676254, at *13 (E.D. Mich. Sept. 13, 2013) (citing *Blakley v.

Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).  "The more a medical

source presents relevant evidence to support an opinion, particularly medical signs

and laboratory findings, the more weight we will give that opinion.  The better an

explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

### 2. Two-Prong Controlling Weight Assessment

Here, the ALJ determined that the medical opinions of two of plaintiff's treating physicians, Dr. Lis-Planells and Dr. George, were not entitled to controlling weight. Plaintiff disagrees. Plaintiff maintains that the medical opinions of both doctors are well supported by the objective medical evidence, treating records, and response to treatment and are therefore, entitled to controlling weight.

Dr. Lis-Planells is plaintiff's treating neurologist. He examined and treated plaintiff regularly in 2009, 2010, and 2012. (Dkt. 13-7, Pg ID 450, 448, 258, 273, 434, 424, 432, 434). Dr. Lis-Planells diagnosed plaintiff with cervical herniated nucleus pulposus (HNP) with radiculopathy. (Dkt. 13-7, Pg ID 474). Objective findings included cervical spasm, cervical MRI, and multiple physical examinations of plaintiff where his cervical spine had decreased range of motion with flexion and extension, and muscle spasm. *Id*. Dr. Lis-Planells made several attempts to improve plaintiff's medical condition and to help manage his pain

without significant success.  His medical treatment of plaintiff included recommending multiple rounds of physical therapy, epidural injections, electrical modality, and surgical recommendation.  (Dkt. 13-7, Pg ID 434, 311, 504).

Likewise, plaintiff contends that Dr. George's opinions are well-supported by the objective medical evidence.  Dr. George treated plaintiff for several years predating his disability hearing, primarily handling plaintiff's pain medication management. (Dkt. 13-7, Pg ID 556).  Dr. George saw plaintiff several times in 2010, 2011, and 2012.  (Dkt. 13-7, Pg ID 332-34, 417, 419-20, 322, 430-31).  Treatment included medication refills, referral for physical therapy, referrals for additional diagnostic testing, referrals to Dr. Lis-Planells, and injections.  *Id*.  Dr. Lis-Planells also copied Dr. George on plaintiff's chart notes. (Dkt. 13-7, Pg ID 504, 508, 511, 515, 520).

Dr. Lis-Planells opined that plaintiff could lift and carry 10 pounds occasionally and five pounds frequently; he could not repetitively bend the neck; he could not sit for more than 30 minutes without interruption on any single occasion; he could not sit for more than an hour and a half total, and he would require complete freedom to rest without restriction.  (Dkt. 13-7, Pg ID 470-72, 474).  Similarly, Dr. George opined that plaintiff could only sit for two hours total in an eight hour work day because sitting caused his neck to become stiff, crack, and painful.  (Dkt. 13-7, Pg ID 553-555, 556).  Further, plaintiff required complete

12

freedom to rest without restriction. (Dkt. 13-7, Pg ID 556). According to plaintiff, the limitations articulated by both doctors are well supported by the objective medical records and consistent with the overall medical records and response to treatment, and limit plaintiff to less than sedentary work.

On the other hand, the Commissioner argues that substantial evidence supports the ALJ's decision to accord limited weight to the two treating doctors' opinions. The ALJ explained that Dr. Lis-Planells' opinions were inconsistent with some of his other opinions, as well as the opinions of the consultative examining and reviewing physicians. (Dkt. 13-2, Pg ID 59-60). Further, the ALJ determined that Dr. Lis-Planells' opinions were inconsistent with plaintiff's own description of his activities and limitations. *Id*. Since Dr. Lis-Planells' opinions were inconsistent with other substantial evidence, the Commissioner maintains that the ALJ accurately concluded that his opinions were not entitled to controlling weight.

Additionally, the Commissioner asserts that the ALJ accurately explained the fact that Dr. George's opinions were also inconsistent with other substantial evidence of record, including the opinions of Dr. Jurado and Dr. Lis-Planells that plaintiff could perform sedentary work. (Dkt. 13-7, Pg ID 473, 565). Dr. Lis-Planells and Dr. George each completed three separate worksheet opinions on the same day, May 14, 2013. (Dkt. 13-7, Pg ID 552, 553-56). The ALJ noted that

13

Dr. George contradicted himself in his opinions, and contradicted Dr. Lis-Planells in other opinions. (Dkt. 13-2, Pg ID 60-61). Thus, since Dr. George's opinions were inconsistent with other substantial evidence, the opinions were not entitled to controlling weight.

The undersigned is not persuaded that the ALJ provided the requisite good reasons for assigning the treating source opinions less than controlling weight because the ALJ's decision fails to assess the opinions in accordance with the two-prong controlling weight test. (Dkt. 13-2, Pg ID 59). First, the decision does not discuss whether the treating providers' opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques, and second it does not properly assess their inconsistency with other substantial evidence. *Id.* Rather, the ALJ afforded Dr. Lis-Planells' opinions limited weight <u>only</u> where he reached conclusions that were inconsistent with the RFC; and where an opinion purportedly conflicted with plaintiff's testimony about how long he could sit in his recliner,[1] the ALJ declined to give the opinions <u>any</u> weight, let alone controlling weight. *Id.* Furthermore, while the ALJ criticized the "attorney generated" forms

---

[1] Notably, plaintiff testified that he could sit for <u>four hours</u> per day in his recliner. Even assuming that sitting in a recliner equates to sitting in a typical workplace, this does not satisfy the standards for sedentary work under the Social Security Act and accompanying regulations. A "sedentary" range is generally associated with sitting for about <u>six hours</u> in an eight-hour workday. *Sorrell v. Comm'r of Soc. Sec.*, — Fed. Appx. — ; 2016 WL 4245467, 8* (6th Cir. 2016) (citing SSR 96-9p, 1996 WL 374185, at *3 (S.S.A. July 2, 1996) (noting that in a sedentary range "[s]itting would generally total about 6 hours of an 8-hour workday"); *see also Mager v. Comm'r of Soc. Sec.*, 145 F.3d 1332, at *2 n.2 (6th Cir. 1998) (table).

completed by Dr. Lis-Planells, he adopted those opinions as consistent with his RFC and concluded, without any analysis, that Dr. Lis-Planells' opinion that plaintiff could perform sedentary work "was supported by the longitudinal record including the recent consultative exam." *Id*. at 59-60.  While the ALJ's decision purports to support its conclusion on controlling weight, it only provides a confusing and internally inconsistent rationale, which results in ambiguity.

This case is similar to *Gayheart*, *supra*, in that the ALJ there, also concluded that the treating physician opinions were not well-supported by any objective findings.  On appeal, the Sixth Circuit determined that the ALJ's decision in that regard was ambiguous.  The Court explained that it could not "determine whether the purported problem is that the opinions rely on findings that are not objective (i.e., that are not the result of medically acceptable clinical and laboratory diagnostic techniques, *see* 20 C.F.R. § 404.1527(c)(2)), or that the findings are sufficiently objective but do not support the content of the opinions." *Gayheart*, 710 F.3d at 377.  The *Gayheart* court also rejected the ALJ's determination that the opinions of nontreating and nonexamining doctors constituted "substantial evidence" in support of the decision to deprive the treating physician opinions of controlling weight.  As the Sixth Circuit held,

> Otherwise the treating-physician rule would have no
> practical force because the treating source's opinion
> would have controlling weight only when the other

15

> sources agreed with that opinion. Such a rule would turn
> on its head the regulation's presumption of giving
> greater weight to treating sources because the weight of
> such sources would hinge on their consistency with
> nontreating, nonexamining sources.

*Id*. at 377.  Consequently, the ALJ cannot use conflicting opinions of non-treaters to create substantial evidence in support of his conclusion that the treating physician opinions were not entitled to controlling weight.  As such, we are left with the ALJ's reference to plaintiff's self-articulated ability to sit in a recliner for four hours per day (which is inconsistent with the general requirements of sedentary work) and the ALJ's statement that Dr. Lis-Planells' opinion that plaintiff could perform sedentary work was supported by the longitudinal record including the recent consultative exam by Dr. Jurado - which, like the opinions of Dr.'s Lis-Planell and George - is memorialized in the form of attorney-generated forms.

Like the circumstances in *Gayheart*, here it is impossible to tease out a properly analyzed reason for the ALJ's decision to withhold controlling weight to the opinions.  Part of the ALJ's stated skepticism about the forms completed by Dr. Lis-Planell and Dr. George is because they, "[a]re couched in the language of our rules and regulations and not in the form of medical terminology."  (Dkt. 13-2, Pg ID 60).  The ALJ reasoned that in doing so, a doctor may be answering questions beyond his expertise, and perhaps even be motivated to provide opinions

the doctor believes will help his patient's claim.  *Id.*  Notably, however, the ALJ acknowledges that it is "difficult to confirm such motives," and does not expressly state or point to evidence that either doctor's opinions are not the result of medically acceptable clinical and laboratory diagnostic techniques.  *Id.*  Given the ALJ's criticism of the attorney-generated forms, it is incongruous for the ALJ to then circle back and rely on the single checking of a box (by Dr. Jurado) on such a form to support his controlling weight determination.  The decision's lack of a clear, cohesive, and substantive analysis under the two-prong controlling weight test necessarily amounts to a failure to provide good reason for discounting the opinion's weight, which compels a remand.  *See Gayheart*, 710 F.3d at 376.

3.      "Good Reasons" Assessment

Separately, plaintiff also argues the ALJ did not give good reasons for the actual weight given to the treating medical opinions, under the second part of the *Gayheart* analysis.  The ALJ gave great weight to Dr. Lis-Planells' opinion that plaintiff could not return to his past work, which was at a heavy extertional level, but gave little weight to the opinion that plaintiff could not work other jobs.  (Dkt. 13-2 Pg ID 59).  The ALJ gave "great weight" to Dr. Lis-Plannells' opinion that plaintiff could perform "sedentary work" but gave no weight to the opinion that plaintiff was required complete freedom to rest as inconsistent with the ability to perform "sedentary work."  *Id*. at Pg ID 59-60.  As to Dr. Lis-Plannells' November

14, 2012 opinion, the ALJ gave it weights that varied from "significant" (as to the postural and environmental limitations) to "no weight at all" (the one-half hour sitting limitation).  *Id.* at 59.

In rejecting the medical opinion of Dr. Lis-Planells that plaintiff could only sit for an hour and a half total during a work day, the decision pointed to plaintiff's testimony that he sits in a recliner most of the day.  (Dkt. 13-2, Pg ID 59). Plaintiff testified that he sits in his recliner "for a little while, a couple hours. Then I go lay down in bed, and I do the circle-lay down a little while on my side, because I get cramped up.  And I go back to bed, move around."  (Dkt. 13-2, Pg ID 82).  Plaintiff points out that a recliner is a chair one uses to lay back, and posits that it seems unlikely that sitting in a recliner is the same as sitting in a chair for gainful employment.  Rather, plaintiff advances that his testimony about moving between his recliner and his bed is consistent with Dr. Lis-Planells' opinion that he needs complete freedom to rest without restriction.  However, the decision also rejected both Dr. Lis-Planells and Dr. George's medical opinions that he needed complete freedom to rest without restriction.  (Dkt. 13-2, Pg ID 59). In dismissing these opinions the decision pointed to physician statement forms on which Dr. Lis-Planells and Dr. George checked a box indicating plaintiff could perform sedentary work.  (Dkt. 13-2, Pg ID 60).

The Commissioner maintains, however, that the ALJ here gave several good

reasons for the weight assigned to Dr. Lis-Planells' opinions.  (Dkt. 13-2, Pg ID 59-60).  As the ALJ explained, Dr. Lis-Planells provided several different opinions.  *Id.*  Some of Dr. Lis-Planells' opinions indicated that plaintiff could perform sedentary work (Dkt. 13-7, Pg ID 473), while others stated that plaintiff had restrictions that would preclude any substantial gainful work activity.  (Dkt. 13-7, Pg ID 474).  The ALJ also reasoned that Dr. Lis-Planells' opinions were inconsistent with plaintiff's testimony, and that the opinions seemed to reflect occupational rather than medical judgments.  (Dkt. 13-2, Pg ID 59-60).  The Commissioner points out that consistency with other evidence is one of the key factors for weighing opinion evidence.  20 C.F.R. § 404.1527(c)(4).  As described above, in assigning little weight to Dr. Lis-Planells' opinions, the ALJ explained that his opinions were inconsistent with other opinions he authored on the same date.  (Dkt. 13-2, 59-60).

According to the Commissioner, the ALJ reasonably emphasized the major inconsistencies between Dr. Lis-Planells' three November 14, 2012, opinions regarding plaintiff's abilities, particularly with regard to sitting.  (Dkt. 13-7, Pg ID 471, 473).  Dr. Lis-Planells' opinion that plaintiff could not sit for more than 30 minutes per day was directly contradicted by his opinion that plaintiff could do a job that "involve[d] sitting most of the time."  *Id.*  The Commissioner maintains that the "stark inconsistency" between opinions authored on the same day

19

regarding a critical functional ability justifiably led the ALJ to question the probative value of the opinions.  (Dkt. 13-2, Pg ID 60-61.  *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (*en banc*) (ALJ reasonably rejected treating source opinion that was inconsistent with other opinions provided by the same source).

According to the Commissioner, the ALJ also gave several good reasons for the weight assigned to Dr. George's opinions.  (Dkt. 13-2, Pg ID 59-60).  As the ALJ explained, Dr. George provided several different opinions, some contradicting others that he authored that same day.  *Id*. at Pg ID 60.  Dr. George opined that plaintiff could stand and walk for a total of 2 hours in an 8-hour workday, but that he could stand and walk for zero hours on any single occasion.  (Dkt. 13-7, Pg ID 554).  The ALJ recognized that Dr. George's opinions were inconsistent with opinions from plaintiff's other treating source, Dr. Lis-Planells, and also inconsistent with opinions from state agency consultative examining and reviewing physicians.  (Dkt. 13-2, Pg ID 60).  The Commissioner points out that Dr. George's May 2013 opinion that plaintiff could stand and walk for only 2 hours during an 8-hour workday and could stand and walk for zero hours without interruption was both internally inconsistent and inconsistent with Dr. Lis-Planells' November 2012 opinion that plaintiff had no limitations in standing and walking.  (Dkt. 13-7, Pg ID 470-71).  Dr. George and Dr. Lis-Planells also

20

differed regarding plaintiff's sitting limitations, with Dr. George opining that plaintiff could sit for 2 hours in an 8-hour workday (though, illogically, he could sit without interruption for zero hours) (Dkt. 13-7, Pg ID 554), and Dr. Lis-Planells opining that plaintiff could only sit for one half-hour without interruption in an 8-hour workday. (Dkt. 13-7, Pg ID 471). Dr. George opined elsewhere that plaintiff could perform sedentary work, which was defined as working involving "sitting most of the time…" (Dkt. 13-7, Pg ID 552). The examining physician Dr. Jurado opined that plaintiff could sit, stand, and walk for a total of 4 hours per activity in an 8-hour workday (Dkt. 13-7, Pg ID 565), while the reviewing physician Dr. Ahmed opined that plaintiff could sit, stand, and walk for a total of 6 hours per activity. (Dkt. 13-3, Pg ID 106). Given the divergence in the opinion evidence, the Commissioner asserts that the ALJ reasonably rejected Dr. George's opinions. (Dkt. 13-2, Pg ID 60).

The Commissioner also points out that, in certain circumstances, the ALJ is empowered to give greater weight to the opinions of the state agency medical consultant than to the treating physician. *See* SSR 96-6p, 1996 WL 374180, at *3. The Commissioner maintains that the ALJ appropriately gave great weight to the opinions of the consultative examining physician Dr. Jurado, while giving little weight to the opinions of Dr. Lis-Planells and Dr. George. Dr. Jurado performed a thorough physical examination of plaintiff on June 7, 2013. (Dkt. 13-7, 557-64).

21

Dr. Jurado opined that plaintiff could sit, stand, and walk for 4 hours each in an 8-hour workday. *Id*. at Pg ID 566. Moreover, state agency reviewing physician Dr. Ahmed reviewed the record in June 2012. (Dkt. 13-3, Pg ID 103-107). The record included the MRI evidence showing moderate left neuroforaminal narrowing at C2-C3 and small C4-C5 paracentral disc protrusion. (Dkt. 13-3, Pg ID 103). Dr. Ahmed opined that plaintiff could sit, stand, and walk for 6 hours each in an 8-hour workday, and that he could occasionally lift 20 pounds and frequently lift up to 10 pounds. (Dkt. 13-3, Pg ID 106). According to the Commissioner, the ALJ ultimately adopted an RFC finding that was more limiting than either Dr. Jurado or Dr. Ahmed opined. (Dkt. 13-2, Pg ID 53). The ALJ's RFC finding was largely consistent with the opinions provided by both Dr. Lis-Planells and Dr. George that plaintiff could perform sedentary work. (Dkt. 13-7, Pg ID 473, 552).

In the Court's view, even if the decision's rationale for discounting the opinions arguably could be read as an assessment under the two-prong controlling weight standard, the explanation offered by the ALJ does not suffice as good reasons under *Gayheart*. *Id*. As noted in *Gayheart*, good reasons must be supported by the evidence in the case record and must be sufficiently specific to permit meaningful review of the ALJ's application of the treating source rule. *Id*.

In this case, as noted by plaintiff in the reply brief, both the treating

22

physician opinions <u>and</u> the consulting opinion on which the ALJ relied heavily suffer from internal inconsistencies. Yet, the ALJ did not explain why some internally inconsistent opinions were supported by substantial evidence and others were not. Rather, he only adopted the opinions from the treating physician that were consistent with his RFC - and rejected those that were not, without determining which opinions from the those treating physicians were actually supported by the evidence in the record. In doing so, the ALJ ignored inconsistencies in the very opinion on which he relied so heavily. Dr. Jurado opined both that plaintiff could "never" lift 11-20 pounds and could "occasionally" lift 11-20 pounds. (Dkt. 13-7, Pg ID 565). This is precisely the kind of inconsistency on which the ALJ based his rejection of the treating physicians' opinions.

As in *Gayheart*, where the ALJ was "quite critical of the alleged inconsistencies" in the treating physician's opinions, the ALJ here does not "acknowledge equivalent inconsistencies in the opinions of the consultative doctors." *Id. Gayheart* specifically held that an ALJ must not apply more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions because that "is precisely the inverse of the analysis that the regulation requires." *Id*. at 379 (citing 20 C.F.R. § 404.1527(c); SSR 96-6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996)). Thus, the ALJ's

treatment of the medical opinions in this case does not follow *Gayheart's* "good reasons" analysis for reconciling the weights given to the various medical opinions and this matter must be remanded so that the correct standards are applied.

Additionally, the Court rejects the Commissioner's view of the "sedentary" findings by plaintiff's treating physicians. It is true that those findings were not consistent with other findings made by the treating physicians. The ALJ, nevertheless, relied on those opinions to the extent they were consistent with his RFC, but at the same time, rejected much of those opinions for speaking in terms of a vocational analysis rather than a medical or functional analysis. Specifically, the ALJ relied on those very opinions for the conclusion that plaintiff could perform "sedentary" work. (Dkt. 13-2, Pg ID 60). However, beyond the internal inconsistency of relying on opinions otherwise rejected, the definition of "sedentary" used on the form does not comport with the definition of "sedentary" used by the Commissioner. For instance, there is nothing in the definition on the forms explaining that a person would need to be able to sit six hours per day in order to perform sedentary work. (Dkt. 13-7, Pg ID 473, 552); *see also*, note 1. For all of these reasons, this matter must be remanded for further consideration of the second part of the *Gayheart* test, should the ALJ conclude that such opinions are not entitled to controlling weight under the first part of the test.

24

D.    <u>Recontacting Treating Physicians</u>

The Social Security Administration regulation details how to satisfy the

requirement for resolving medical record ambiguities:

> (e) Recontacting medical sources. When the evidence we
> receive from your treating physician or psychologist or
> other medical source is inadequate for us to determine
> whether you are disabled, we will need additional
> information to reach a determination or a decision. To
> obtain the information, we will take the following
> actions.
>
> (1) We will first recontact your treating physician or
> psychologist or other medical source to determine
> whether the additional information we need is readily
> available. We will seek additional evidence or
> clarification from your medical source when the report
> from your medical source contains a conflict or
> ambiguity that must be resolved, the report does not
> contain all the necessary information, or does not appear
> to be based on medically acceptable clinical and
> laboratory diagnostic techniques. We may do this by
> requesting copies of your medical source's records, a
> new report, or a more detailed report from your medical
> source, including your treating source, or by telephoning
> your medical source. In every instance where medical
> evidence is obtained over the telephone, the telephone
> report will be sent to the source for review, signature and
> return.

20 C.F.R. § 404.1512(e)(1); *see e.g.*, *Rogers v. Astrue*, 2011 WL 4479524 (E.D.

Tenn. 2011) (where treating physician's notes are illegible, seeking a supplemental

evaluation from the treating physician was deemed to satisfy the "recontacting"

requirement); *see also* 20 C.F.R. § 404.1527(c); *Sims v. Apfel*, 530 U.S. 103,

110-111 (2000) (The ALJ has a duty to investigate the facts and develop the arguments both for and against granting benefits.); *D'Angelo v. Soc. Sec. Comm'r*, 475 F.Supp.2d 716 (W.D. Mich. 2007) (Where an ALJ discounts the opinions of a treating physician because the record includes virtually no medical records of plaintiff's treatment with that physician, the ALJ should perform a further investigation pursuant to SSR 96-5p.).

The Sixth Circuit has described a two-part test from Social Security Ruling 96-5p, which parallels the requirements in § 404.1512(e). First, the evidence in the record must not support the treating physician's opinion. *Ferguson v. Comm'r*, 628 F.3d 269, 273 (6th Cir. 2010); *see also Lovelace v. Astrue*, 2011 WL 2670450 (E.D. Tenn. 2011). Second, the ALJ must be unable to ascertain the basis of the opinion from the evidence in the record. *Id*. In *Ferguson*, the Sixth Circuit determined that the second prong of the test was not met because the ALJ explained that the applicable physician's opinion was based on self-reported history and subjective complaints, not on objective medical evidence. *Id*. The Sixth Circuit noted that "to the extent the ALJ 'rejected' Dr. Erulkar's 'opinion of disability,' he did so not because the bases for her opinion were unclear to him, but because those bases, Ferguson's self-reported history and subjective complaints, were not supported by objective medical evidence." *Id*.

Here, as discussed in detail above, the ALJ did not satisfactorily explain

how and why the treating physician opinions were not supported by the record.

Thus, the Court cannot determine at this stage of the proceedings whether the first

prong is satisfied.  But it appears that the second prong is essentially satisfied

because while the ALJ might have been "able" to ascertain the basis of the opinion

from the record, he did not do so.  This situation is distinguishable from that

presented in *Ferguson* where the bases of the rejected treating physician opinion

were, in fact, clear to the ALJ and anyone reviewing the record.  This situation is

also unlike that presented in *Poe v. Comm'r*, 342 Fed.Appx. 149, 156-157 (6th

Cir. 2009), where the opinion at issue was contradicted by two other treating

physicians.

    Even if the ALJ does not have a duty under *Ferguson* to re-contact the

treating physicians, given the clear confusion created by those opinions and the

existence of a medical opinion from Dr. Jurado which is itself internally

inconsistent and contrary to the ALJ's conclusion that plaintiff could perform

sedentary work, seeking more clarity in developing the medical opinions in the

record is prudent.  While the plaintiff bears the burden of establishing disability,

the ALJ also has a duty to fully develop the record.  *Sims v. Apfel*, 530 U.S. 103,

110-111 (2000) (The ALJ has a duty to investigate the facts and develop the

arguments both for and against granting benefits).  Under these circumstances, in

order to formulate an accurate RFC, the ALJ needs to resolve the internal

27

inconsistencies in the medical opinions.  Thus, on remand, the ALJ is directed to

supplement and clarify Dr. Lis-Planells' and Dr. George's opinions.[2]

**IT IS SO ORDERED**.

Date: March 31, 2017                    s/Stephanie Dawkins Davis
                                        Stephanie Dawkins Davis
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on <u>March 31, 2017</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

---

[2] The ALJ will necessarily have to re-evaluate plaintiff's credibility on remand, which was inextricably tied to the ALJ's assessment of the treating physician opinions.  Thus, the specific arguments raise by plaintiff regarding the ALJ's RFC assessment need not be addressed here. Nothing precludes plaintiff from raising those issues before the ALJ on remand.